HOWARD et al., Appellants,

v.

COVENTRY TOWNSHIP BOARD OF ZONING APPEALS et al., Appellees.

[Cite as *Howard v. Coventry Twp. Bd. of Zoning Appeals* (1996), 110 Ohio App.3d 691.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17505.

Decided May 1, 1996.

**692**

---

*William Nye* and *Estelle Flasck,* for appellants.
*Irving Sugerman* and *Alex Susman,* for appellees.

Quillin, Presiding Judge.

Appellants, Debbie A. Howard et al., appeal from a judgment of the Summit County Court of Common Pleas, which affirmed a decision of the Coventry Township Board of Zoning Appeals to grant an area variance. We affirm.

This case came before the Coventry Township Board of Zoning Appeals ("board") in April 1995. Alex Susman, a builder who intended to purchase a twelve-lot parcel of property in Coventry Township, desired to build six houses on the property. Because Susman's plan did not comply with Coventry Township requirements for lot size or front and rear setbacks, Susman applied for the necessary variance. Following a public hearing, the board granted Susman's requested variance. At the hearing, some of the appellants voiced opposition to the variance, expressing concerns about potential overcrowding and depletion of the groundwater supply.

Appellants, several neighboring landowners, appealed the board's decision to the Summit County Court of Common Pleas. The common pleas court affirmed the board's decision.

Appellants appeal to this court and raise thirteen assignments of error, none of which has been separately argued as required by App.R. 16(A)(7). Consequently, pursuant to App.R. 12(A)(2), we will disregard the enumerated errors, and address only the issue which has been properly briefed. The issue argued by appellants is whether the common pleas court erred in affirming the board's decision.

█ Our standard of review in an administrative appeal pursuant to R.C. Chapter 2506 is quite narrow. In an administrative appeal of a decision of the board of zoning appeals, the common pleas court may reverse the board only if it finds that the board's decision was not supported by "a preponderance of substantial, reliable, and probative evidence." R.C. 2506.04. An appeal to this court is more limited in scope. We must affirm the common pleas court unless we find, "as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 30, 465 N.E.2d 848, 852.

We must therefore determine whether the common pleas court committed an error of law in affirming the board's decision to grant the area variance. The standard for granting an area variance was adopted by the Ohio Supreme Court in *Kisil v. Sandusky, supra*, at syllabus. Recognizing that an area variance has less impact on a neighborhood than a use variance, the court rejected the

standard of unnecessary hardship for a lesser, "practical difficulties" standard. See *id.*, 12 Ohio St.3d at 32–33, 12 OBR at 27–29, 465 N.E.2d at 851.

Two years later, the Ohio Supreme Court elaborated on the practical difficulties standard. "The key to this standard is whether the area zoning requirement, as applied to the property owner in question, is reasonable." *Duncan v. Middlefield* (1986), 23 Ohio St.3d 83, 86, 23 OBR 212, 215, 491 N.E.2d 692, 695. The *Duncan* court further stressed that, unlike the unnecessary hardship standard applied in use variance cases, no single factor will control. Rather, factors such as the following should be considered:

" * * * (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (*e.g.*, water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance." *Id.* at syllabus.

At the hearing before the board, Susman testified that although he was aware of the zoning restriction before he decided to purchase this property, he could not profitably develop this property without the requested variance. Susman sought to build affordable homes in the $100,000 to $125,000 price range, which would fit in well with and even enhance the neighborhood. He noted that his proposed setbacks and lot sizes were consistent with most of the homes in the area, including several recently constructed homes. Susman would need a variance even to build three houses on this property, and he testified that such development would not be financially practicable. To develop only three homes at a profit, he would have to build $300,000 homes, which would not fit in with the more modest homes in this area, and which would be difficult to sell. Although appellants attempt to dispute this evidence now, Susman's testimony was not contradicted by any other evidence before the board.

Susman also presented the testimony of the owner of a well-drilling business, who testified that an additional six homes would not present a threat to the groundwater supply. Although some of the appellants testified that they were concerned that their wells would run dry, they presented no evidence that the additional homes would create any problems.

On appeal, appellants basically concede that some variance was required to enable Susman to develop this property. Their primary argument is that a lesser variance was in order. They would prefer that only four homes be built on this property, rather than six. To re-examine the extent to which Susman should be allowed to vary from the zoning code would require us to step into the role of factfinder, which is not appropriate at this level of review. The trial court affirmed the board's determination that Susman's requested variances were appropriate. Appellants have failed to convince us that the common pleas court's decision was wrong as a matter of law. The assignments of error are overruled.

*Judgment affirmed.*

SLABY, J., concurs.

BAIRD, J., dissents.

BAIRD, Judge, dissenting.

As to the parcel in question, the zoning resolution would permit the construction of two houses, but the variance would permit the construction of six houses. The board of zoning appeals has thus increased the intensity of development of the land by two hundred percent.

In a somewhat analogous case, this court recently said:

"The minimum lot size under the zoning ordinance is two hundred fifty percent larger than the lot for which Trademark demands a variance. Trademark has given this court no legal authority for such a large exception. A board of zoning appeals is not authorized to rezone an area of the city. * * * Because of the magnitude of Trademark's request, a variance in its case would amount to a rezoning." *Trademark Homes v. Avon Lake Bd. of Zoning Appeals* (1993), 92 Ohio App.3d 214, 220, 634 N.E.2d 685, 689.

The limited powers of a township board of zoning appeals are statutorily set forth as follows:

"The township board of zoning appeals may:

" * * *

"(B) Authorize, upon appeal, in specific cases, such variance from the terms of the zoning resolution as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the resolution will result in unnecessary hardship, and so that the spirit of the resolution shall be observed and substantial justice done." R.C. 519.14.

In the belief that two hundred percent off the mark cannot be viewed as within the spirit of the zoning resolution, I would reverse.