OPINION
{¶ 1} Appellants, Ray Stovall and Phyllix Stovall, appeal the judgment of the Portage County Court of Common Pleas affirming the denial of the Streetsboro Board of Zoning and Building Appeals ("BZA") of appellants' request for area and height variances for a retaining wall appellants constructed on their property. At issue is whether appellants have established practical difficulties warranting the requested variances. For the reasons that follow, we affirm. *Page 2 
 {¶ 2 This is the third appeal we have considered arising from appellants' retaining wall. Appellants reside at 2082 Deer Crossing Drive, Lot 53 of the Deer Meadow Subdivision, in Streetsboro, Ohio. Their lot is located in an "R-1 Low Density Urban Residential" zoning district.
 {¶ 3} Appellants purchased and moved into their newly-constructed residence in late 1997. In 1998 they began to construct a retaining wall in the setback and easement areas at the side and rear of their lot. They built the wall in the corner of their backyard. In that year the City of Streetsboro issued a stop work order to appellants. The City then brought an action for injunctive relief to prevent appellants from completing construction of the wall along the rear and side boundaries of their property and from filling in the rear of their property to the height of the wall. Streetsboro claimed that the height of the wall was prohibited by local ordinance and that appellants failed to obtain the necessary permit for construction of the wall. The trial court entered a permanent injunction preventing appellants from completing the wall and ordering them to remove the portion of the wall that was erected.
 {¶ 4} Appellants appealed the trial court's decision in City ofStreetsboro v. Encore Homes, 11th Dist. No. 2000-P-0089, 2001-Ohio-4318 ("Streetsboro I"). In that case we held that the Streetsboro Codified Ordinances ("S.C.O.") required a permit for every "filling" or "grading" and before proceeding with the construction of any structure. "Structure" is defined by the S.C.O. as "anything constructed or erected, requiring a permanent location on the ground * * *, i.e. * * * walls, etc." We held that the trial court correctly granted injunctive relief to the City because appellants failed to obtain the *Page 3 
necessary permits prior to construction of their wall and the filling and grading of their yard.
 {¶ 5} Appellants attempted to appeal our decision to the Ohio Supreme Court. That court did not allow appellant's discretionary appeal inStreetsboro v. Encore Homes, 99 Ohio St.3d 1544, 2003-Ohio-4671. Appellants then attempted to appeal to the United States Supreme Court. The Supreme Court denied appellants' writ of certiorari in Stovall v.City of Streetsboro (2004), 540 U.S. 1181.
 {¶ 6} Thereafter, appellants and the City entered a consent judgment entry in 2004, pursuant to which appellants were permitted to keep the retaining wall in place if they reduced its height to thirty inches in compliance with local ordinances until the BZA could hear appellants' application for variances.
 {¶ 7} In 2001 appellants filed a motion in the trial court to vacate its 2000 decision granting an injunction to appellee, claiming their attorney perpetrated a fraud on the court as he was not licensed to practice law. The trial court denied the motion, and appellants appealed that decision in the case of Streetsboro v. Encore Homes, 11th Dist. No. 2002-P-0018, 2003-Ohio-2109 ("Streetsboro II"). We affirmed the trial court's denial of this motion, holding that appellants could not use Civ.R. 60(B) as a substitute for an appeal.
 {¶ 8} On April 6, 2004, appellants filed an application with the BZA for area and height variances to rebuild a retaining wall in the setback and easement areas of the rear and side of their lot. The minimum rear yard setback is fifty feet, Sec. 1127.04(b); the minimum side yard setback is twelve feet, Sec. 1127.04(c); and the height limit for retaining walls is thirty inches, Sec. 1151.23(a). Appellants wanted variances to locate *Page 4 
their wall eighteen inches from their rear and side property lines and further to increase its height to six feet. The height variance would allow appellants to rebuild their wall from its current thirty inches to a height of six feet. The variance would result in a variance of forty-eight and one-half feet of the fifty foot rear yard setback and variance of ten and one-half feet of the twelve foot side yard setback.
 {¶ 9} The BZA conducted a hearing on appellants' application on May 18, 2004. Ms. Stovall testified there is a steep slope in their rear yard. They have two open downspouts connected to gutters at the rear of their home. She said the rainwater collected by the downspouts causes erosion in her backyard. She also opined the erosion caused cracks to form in the foundation of her home. She said they constructed the retaining wall to control the erosion in their back yard. Their wall is eighteen inches from the rear and side property lines. They also installed arborvita along the front of the wall to absorb the ground water and to eliminate the runoff.
 {¶ 10} Ms. Stovall testified that prior to purchasing their lot they had walked the area and saw water runoff. They chose their lot because it was the highest lot on the cul-de-sac. The developer had told them he would tie the downspouts on the back of the house to a drain which would direct the rain water to the storm sewer, but he failed to do so.
 {¶ 11} Several neighbors and members of the homeowners' association testified they were opposed to appellants' variance requests. The neighbors complained about the appearance of the oversize concrete blocks used to construct the wall and the adverse affect of the wall on their property. *Page 5 
 {¶ 12} Adjoining property owner Jeanne Utz testified on behalf of the Deer Meadows Homeowner's Association, of which appellants are also members. She testified her property is located to the rear of appellants' lot. She said appellants built the wall by choice, not by necessity, and in disregard of its negative impact on adjoining properties.
 {¶ 13} Utz testified the wall is a "monstrosity." It is made of large cement blocks which are two feet by two feet by four feet and too large to be used in a residential neighborhood.
 {¶ 14} Utz said appellants' difficulty is self-imposed because they chose their lot and then decided to build the wall and level their back yard. They brought in concrete blocks with heavy mechanized machinery to construct the wall, then back-filled it with truckloads of dirt. The wall changed the topography of the land. Other lots on the cul-de-sac are steeper than appellants' lot and those owners have not constructed retaining walls.
 {¶ 15} She testified appellants built the wall without seeking the required City permits and variances and without complying with restrictive covenants on appellants' lot which require prior approval of the wall by the homeowners' association. She objected to the wall being within the setbacks because appellants will have to go onto their neighbors' property to maintain it.
 {¶ 16} Ms. Utz testified appellants' retaining wall funnels water onto her yard. For six years she has been forced to deal with her yard being marsh-like and a breeding ground for mosquitoes due to appellants' wall. *Page 6 
 {¶ 17} She testified the wall has an adverse impact on her property, and she asked that it be removed and that the ground be restored to its original topography.
 {¶ 18} Jennifer Whitaker, whose property is directly behind appellants' lot, testified the wall is not helping her property at all. She said her house was on the market for more than one year before she bought it. There is a fence on her property which obstructs her view of the wall. She and her husband were not told about the wall before they purchased their property. She testified the wall is not appropriate in a residential district. It affects her because it causes water to remain in her yard. She said the wall should be removed and the land should be restored to its original grade.
 {¶ 19} Michael O'Flaherty testified he lives directly below appellants' wall and is adversely affected by it. He testified the wall has exacerbated the water problems in his yard and needs to be removed.
 {¶ 20} Streetsboro City Engineer William Rudlosky testified concerning appellants' property as follows: "We have [five-foot] easements along [each side of] the property lines to install drains. The back corner of that wall's been removed for a long time so I don't anticipate additional runoff. A drain could be installed in that back corner, their downspouts could be tied into it and the remaining areas could be dried up with a minimal investment with a drain out to the street at that point."
 {¶ 21} The BZA noted that retaining walls over thirty inches in height were required to be set back at least twelve feet from the side property line and at least fifty feet from the rear property line. Appellants wanted to keep the wall in the corner of their back yard eighteen inches from the rear and side property lines. This placed the wall in the side and rear set backs and near the middle of the utility easement. *Page 7 
 {¶ 22} Appellants submitted a letter from the Ohio Environmental Protection Agency, dated November 24, 2000, advising them that City Engineer William Rudlosky agreed to take responsibility to correct any erosion problem that may exist after the wall is removed.
 {¶ 23} At the conclusion of the BZA hearing, the Board unanimously voted to deny appellants' request for variances, concluding that the wall was in the utility easement and was too high. Appellants filed an appeal to the Portage County Court of Common Pleas. They also filed a motion for the court to take additional evidence pursuant to R.C.2506.03, which the court granted.
 {¶ 24} At the hearing on additional evidence held by the magistrate, appellants called James Bierlair, District Coordinator for the Portage County Soil and Water Conservation District, as their witness. He testified appellants had reduced the surface flow of rain water and increased water infiltration with flowerbeds they had planted on their property. He said that while appellants' retaining wall reduces the flow of water and erosion, they had also taken other measures which were just as effective as their wall in accomplishing these objectives. He said appellants' wall increased ground water infiltration, but that their flowerbeds and landscaping above the wall are more effective than the wall itself in reducing water flow and erosion. He testified appellants can accomplish the same thing with methods other than a retaining wall.
 {¶ 25} Finally, he testified that flowerbeds and an established lawn would greatly reduce or "completely eliminate" the erosion problem on appellants' property without the retaining wall. He saw no relationship between the yard erosion and any movement in the foundation of appellants' home. *Page 8 
 {¶ 26} Mr. Bierlair also testified he had only seen the huge cement blocks appellants used to construct their wall at construction sites.
 {¶ 27} Ms. Stovall testified their lot is on a cul-de-sac at the top of a hill. There is a seventeen-foot drop from the downspouts at the rear of her house to the end of her backyard. In the spring of 1998, they discovered the developer had failed to connect the two open downspouts at the rear of their house to the storm sewer. At that time they also discovered erosion in their backyard and cracks in the foundation of their home. Their wall is made of cement blocks; each block weighs a few tons; and these blocks require heavy mechanized equipment to move them.
 {¶ 28} The magistrate in his decision and journal entry analyzed the evidence presented at the BZA hearing and during the R.C. 2506.03
hearing under the factors set forth in Duncan v. Middlefield (1986),23 Ohio St.3d 83, at syllabus.
 {¶ 29} Under the first factor, the magistrate found that appellants can enjoy the beneficial use of their land without the requested variances. He found appellants' erosion problem can be rectified without the variances. The erosion on appellants' land is primarily caused by the flow of rainwater from appellants' downspouts. Directing downspouts into drains would correct the major source of erosion. Alternatively, as the BZA noted, appellants could lawfully build additional thirty-inch retaining walls higher on the slope outside the setbacks which would reduce the erosion. Appellants' flowerbeds, landscaping, and grass have ameliorated the erosion.
 {¶ 30} Second, the magistrate found the requested variances were substantial. Appellants' wall is eighteen inches from the back and side property lines. The wall would require a variance of ten and one-half feet from the twelve-foot side yard setback *Page 9 
and a variance of forty-eight and one-half feet from the fifty-foot rear yard setback. Appellants thus requested variances of almost one hundred per cent from both the rear and side yard setbacks.
 {¶ 31} Third, the magistrate found the essential character of the neighborhood would not be substantially changed by the retaining wall as it would be screened by arborvita and other vegetation.
 {¶ 32} Fourth, the magistrate found the provision of governmental services such as sewer drains and the extension of utilities would be adversely affected by the placement of the six foot wall in the utility easement area. The large concrete blocks used to build the six-foot wall each weigh several tons and can only be moved by heavy, mechanized equipment.
 {¶ 33} Fifth, the magistrate found appellants were unaware of the zoning restrictions when they built the wall.
 {¶ 34} Sixth, the magistrate found appellants have viable alternatives to the variances. Their erosion problems can be corrected without variances by piping downspouts into drains, building thirty-inch retaining walls outside the setbacks, and maintaining grass and flowerbeds.
 {¶ 35} Seventh, the magistrate found that granting the substantial variances would not support the spirit and intent of the zoning requirements and would not result in substantial justice.
 {¶ 36} Finally, the magistrate found that appellants' situation does not present such practical difficulties requiring the requested variances. *Page 10 
 {¶ 37} The magistrate also analyzed the factors for a variance set forth in S.C.O. Sec. 1105.12. He found that the rear of appellants' property is steep, but not substantially different than one adjacent property. He found that appellants did not create the conditions on their property, but that they had not adequately addressed the downspouts they say are eroding their backyard. He found these conditions would be encountered by any owner of this property. The magistrate found appellants were not seeking variances simply to gain a financial benefit, but he found they were not deprived of the right to enjoy their property without the variances. He affirmed the decision of the BZA denying appellants' variance requests. Appellants filed objections thereto. The trial court adopted the Magistrate's findings and decision and overruled appellants' objections. This appeal follows. Appellants assert the following assignments of error:
 {¶ 38} "[1] THE VARIANCE SOUGHT BY THE STOVALLS REQUIRES ONLY HEIGHT AND SETBACK VARIANCES AS MANDATED BY SCO 1327.06 WHICH IS SPECIFICALLY APPLICABLE TO RETAINING WALLS AND IS NOT SUBJECT TO ANY LIGHT AND AIR CONDITIONS AS SET FORTH IN THE INAPPLICABLE AND GENERAL PROVISIONS OF STREETSBORO CODIFIED ORDINANCE 1115.23.
 {¶ 39} "[2] THE BZA'S DENIAL OF THE STOVALL'S (SIC) APPLICATION FOR A VARIANCE TO PERMIT THE REBUILDING OF A 72 INCH RETAINING WALL TO PREVENT EROSION AND DAMAGE TO THEIR HOME MUST BE REVERSED AS ARBITRARY, CAPRICIOUS, UNREASONABLE AND UNSUPPORTED BY SUBSTANTIAL, RELIABLE AND PROBATIVE EVIDENCE.
 {¶ 40} "[3.] THE DECISIONS DENYING THE STOVALLS A VARIANCE FROM OPERATION OF STREETSBORO CODIFIED ORDINANCE 1327.06 TO ALLOW *Page 11 
HEIGHT AND SETBACK VARIANCES FOR A RETAINING WALL NEEDED TO PREVENT EROSION AND HARM TO THEIR HOME MUST BE REVERSED AS INCONSISTENT WITH THE STANDARDS ESTABLISHED FOR AREA ZONING VARIANCES BY BOTH THE SUPREME COURT OF OHIO AND THE CITY.
 {¶ 41} "[4] THE FACTS ASSERTED BY THE MAGISTRATE IN SUPPORT OF HIS DECISION AND JOURNAL ENTRY OF MAY 18, 2006 ARE CLEARLY ERRONEOUS, AGAINST THE WEIGHT OF THE EVIDENCE OR CONTRARY TO LAW AND, THEREFORE, CANNOT SUPPORT THE BZA'S DENIAL OF THE REQUESTED AREA VARIANCE."
 {¶ 42} The instant appeal was taken to the common pleas court under R.C. Ch. 2506. R.C. 2506.01 provides for an appeal from every final order or decision of any administrative agency within a political subdivision to the common pleas court.
 {¶ 43} R.C. 2506.04 sets forth the standard of review of the common pleas court in an administrative appeal. That section provides in part:
 {¶ 44} "The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision * * *."
 {¶ 45} The standard of review applied by the common pleas court is whether there is a preponderance of substantial, reliable, and probative evidence in the record to support the decision of the administrative agency. Community Concerned Citizens, Inc. v. Union Township Bd. OfZoning Appeals (1993), 66 Ohio St.3d 452, 456; see, *Page 12 
also, Meadow Creek Co., Inc. v. Brimfield Twp. (June 30, 1994), 11th Dist. No. 93-P-0070, 1994 Ohio App. LEXIS 2944, *3.
 {¶ 46} In undertaking this review, the common pleas court must give deference to the administrative agency's resolution of evidentiary conflicts. Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 111. The common pleas court may not substitute its judgment for that of the agency, especially in matters of administrative expertise. CommunityConcerned Citizens, supra, at 456. Further, the common pleas court is required to presume the decision of the administrative agency is reasonable and valid. Id.
 {¶ 47} This rule also applies when the common pleas court has taken additional evidence pursuant to R.C. 2506.03. It has thus been held that in an R.C. Ch. 2506 appeal, the court of common pleas must weigh the evidence in the record and whatever additional evidence may be admitted pursuant to R.C. 2506.03, to determine whether there exists a preponderance of reliable, probative, and substantial evidence to support the agency decision. Dudukovich v. Lorain Metropolitan HousingAuthority (1979), 58 Ohio St.2d 202.
 {¶ 48} In an appeal from a decision of a board of zoning appeals to the common pleas court, that court is authorized only to determine the legal justification of the board's decision based on the evidence that was before the board and also on supplemental evidence before the court if such evidence was admitted pursuant to R.C. 2506.03. Manning v.Straka (1962), 117 Ohio App. 55.
 {¶ 49} The role of an appellate court is more limited than that of the common pleas court in the review of a decision of an administrative agency. A court of appeals *Page 13 
must affirm the decision of the common pleas court unless it finds, as a matter of law, that the decision of the common pleas court is not supported by the preponderance of substantial, reliable, and probative evidence. Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34.
 {¶ 50} R.C. 2506.04 gives the common pleas court the authority to weigh the evidence, but the statute grants a more limited power to an appellate court to review the judgment of the common pleas court only on questions of law. This does not give an appellate court the same power to weigh the preponderance of substantial, reliable, and probative evidence which the common pleas court has. Kisil, supra.
 {¶ 51} In the case sub judice, appellants applied for area variances, as opposed to a use variance. In determining whether the property owner has encountered practical difficulties in the use of his property to support his request for an area variance, the factors to be considered include: (1) whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood will be substantially altered as a result of the variance; (4) whether the variance will adversely affect the delivery of governmental services (e.g., sewer); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; and (7) whether the spirit and intent behind the zoning regulation will be observed and substantial justice done by granting the variance. Duncan, supra, at syllabus. No single factor controls the determination of whether a practical difficulty exists. Duncan, supra, at 86. *Page 14 
 {¶ 52} Appellants failed to object to three of the five findings made by the trial court under Duncan which were adverse to them. Specifically, they failed to object to the findings that: (1) they can achieve full beneficial use of their property without a variance; (2) the variances are substantial; and (3) the variances are contrary to the spirit and intent of the zoning regulations and substantial justice would not be done if the variances were granted. Civ.R. 53(E)(3)(d) provides: "A party shall not assign as error on appeal the court's adoption of any finding of fact * * * unless the party has objected to that finding * * *." Appellants have therefore waived the right to assign these findings as error on appeal.
 {¶ 53} Under their first assignment of error, appellants argue that the magistrate incorrectly held that appellants' wall was subject to S.C.O. Sec. 1115.23 concerning fences and walls. In referring to this section, the magistrate was responding to appellants' argument in the trial court that retaining walls are not subject to any regulation under the City's zoning and building code. The magistrate merely cited S.C.O. Sec. 1151.23 to demonstrate that retaining walls are subject to regulation. In any event, as appellants concede, the magistrate's decision is not based on Sec. 1115.23, so this argument is irrelevant.
 {¶ 54} Appellant's related argument that Sec. 1115.23 is inapplicable because Sec. 1327.06 specifically concerns retaining walls, while Sec.1115.23 concerns "fences and walls," is likewise irrelevant since, as appellants admit, the magistrate did not rely on Sec. 1115.23 in rendering his decision.
 {¶ 55} Appellants argue that Sec. 1327.06 concerning retaining walls applies to this appeal. This section, however, is part of the building code, not the zoning code, *Page 15 
and merely requires that retaining walls have building permits. This section does not set forth any height or setback requirements for such walls. This section is therefore not relevant in this appeal.
 {¶ 56} Appellants also suggest that their retaining wall is not subject to any regulation. In Streetsboro I, supra, at *4, we held that the wall was subject to regulation by appellee, and we issued a permanent injunction against appellants' completion of their wall and ordered removal of the existing wall. As a result, this argument is precluded by res judicata. State v. Beckwith (Mar. 2, 2001), 8th Dist. No. 75927, 2001 Ohio App. LEXIS 959; accord, State of Ohio ex rel. G M Tanglewood v. Desiderio, 11th Dist. No. 2003-G-2497, 2004-Ohio-5309.
 {¶ 57} Appellants' first assignment of error is without merit.
 {¶ 58} Under their second assignment of error, appellants argue the BZA's denial of their zoning requests was arbitrary, capricious, and unreasonable and not supported by substantial relevant and probative evidence. They argue the BZA's analysis of the Duncan factors was flawed. While we note that the BZA analyzed the Duncan factors, appellants' argument is moot since, as appellants concede in their brief, the magistrate separately analyzed the evidence presented before the BZA and at the R.C. 2506.03 hearing in light of each of theDuncan factors and made findings of fact supporting his decision. We have held that if the transcript of proceedings of the administrative body is "deficient or incomplete, R.C. 2506.03 provides for the trial court to conduct an evidentiary hearing to `fill in the gaps.'"Stein v. The Geauga County Board of Health, 11th Dist. No. 2002-G-2439, 2003-Ohio-2104, at ¶ 14. R.C. 2506.03(A)(5) provides that a supplemental hearing may be held if the administrative body failed to file with the *Page 16 
transcript conclusions of fact supporting the decision appealed from. After conducting a hearing under R.C. 2506.03, the magistrate prepared detailed conclusions of fact, and thus cured any defect regarding the preparation of conclusions of fact.
 {¶ 59} Appellants argue that unsworn witness testimony at the BZA hearing cannot be considered. We note that most of witnesses testified under oath. Further, we note that appellants failed to object to the testimony of any witnesses on this basis at the BZA hearing, and this argument is therefore waived. In Stores Realty Co. v. Cleveland (1975),41 Ohio St.2d 41, the Supreme Court held: "the omission of administration of the oath to a witness in a trial or administrative hearing is waivable error." Id. at syllabus; see, also, Roop v.Floodplain Regulations Variance Board of Ross County, 4th Dist. No. 03CA2707, 2003-Ohio-5522, at ¶ 21-23, We have also held that a failure to object to unsworn testimony is an effective waiver of the right to appeal upon that ground. City of Warren v. Hill, 11th Dist. No. 2003-T-0069, 2004-Ohio-6946, at ¶ 17.
 {¶ 60} Next, appellants argue that all lay witnesses who opposed their position in the BZA hearing presented only opinion testimony which should not be considered. Since appellant does not cite to any particular testimony, we are unable to consider this argument. We do note that Evid.R. 701 allows for opinion testimony by a lay witness which is rationally based on his perception and is helpful to a clear understanding of his testimony or the determination of a fact in issue.
 {¶ 61} Appellants concede in their reply brief that, "[t]hough appellants may have * * * waived these procedural irregularities as a basis for reversal, their importance to a proper adjudication remains." Appellants do not explain how they can assert these *Page 17 
"procedural irregularities" on appeal once they have been waived. Because we hold that appellants have waived the right to assign any such errors, they cannot be considered for any purposes on appeal.
 {¶ 62} We do not agree with appellants' argument that the BZA based its decision on the fact that appellants chose their lot. The fact that one board member asked if appellants had chosen the lot does not reflect an inappropriate emphasis on this fact.
 {¶ 63} Appellants' argument that Ms. Utz' testimony concerning the cement blocks was mere opinion is not well-taken as she was properly commenting that the wall was constructed of material which in her view was not appropriate in a residential district. Moreover, appellants failed to object to this testimony during the BZA hearing, and this argument is therefore waived. A reviewing court will generally not consider a claim of error to which the appellant failed to raise an objection below. 4 Ohio Jurisprudence 3d, Appellate Review, Sec. 134.
 {¶ 64} We do not agree with appellants' argument that Ms. Utz' testimony that other means were available to reduce erosion and that appellants' wall caused her property to be constantly wet was not based on her personal knowledge. She testified she is a member of the homeowners' association and has lived in the area since 1998. It may therefore be properly inferred that she is familiar with conditions in the subdivision. In any event, appellants failed to object to this testimony and thus waived the right to assert error in this regard.
 {¶ 65} Contrary to appellants' argument, the testimony of Michael O'Flaherty and Jennifer Whitaker was not mere opinion, but rather was based on their personal *Page 18 
knowledge of the affect of appellants' retaining wall on their property. Moreover, appellants never objected to any aspect of their testimony. They therefore waived any argument concerning its admissibility.
 {¶ 66} Appellants complain that the City Engineer William Rudlosky provided unsworn testimony concerning the substantial nature of appellants' variance. However, appellants never objected to this testimony and waived any objection to its admissibility. Stores RealtyCo., supra.
 {¶ 67} Appellants complain that the magistrate did not give credence to them or to their witnesses. It is well-established that the trier of fact is entitled to determine the credibility of the witnesses. In reA.L., 12th Dist. No. 2005-12-520, 2006-Ohio-4329, at ¶ 35. The trier of fact is entitled to believe all, part, or none of the testimony of any witness. State v. Nichols (1993), 85 Ohio App.3d 65, 76. The trier of fact's decision on the credibility of witnesses is owed deference since it is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of witnesses. State v. Kash, 12th Dist. No. CA2002-10-247, 2004-Ohio-415, at ¶ 25, citing Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80. The magistrate was therefore entitled to believe the City's witnesses and to discredit in whole or in part appellants' witnesses
 {¶ 68} Appellants' objection to the discussion by the BZA members concerning the Duncan factors is not well-taken because that discussion is not part of the BZA's findings of fact. Until a final order is rendered, a trial court or an administrative agency is free to revise its order at any time. Civ.R. 54(B). These discussions were not even part of any oral announcement of the board's decision. They are therefore not subject *Page 19 
to objection. It must also be noted that appellants failed to object to this discussion at the BZA hearing, and therefore waived any error in this regard.
 {¶ 69} Appellants' second assignment of error is without merit.
 {¶ 70} Under their third assignment of error, appellants argue the BZA and magistrate's decisions are inconsistent with the applicable standard for area variances and must be reversed. We don't agree.
 {¶ 71} Appellants concede the magistrate relied on the testimony of Mr. Bierlair of the Portage County Soil and Water Conservation District in concluding that appellants can enjoy beneficial use of their property without the variances, but argue that his testimony does not support this finding. However, Mr. Bierlair testified that appellants' maintenance of their flowerbeds, landscaping, and grass would greatly reduce or "completely eliminate" the erosion problem in their back yard. This testimony amply supported the magistrate's finding. Further, the magistrate was entitled to believe the testimony of Mr. Rudlosky that the downspouts at the rear of appellants' home could be tied into a drain. In any event, as noted supra, appellants failed to object to this finding, and they are precluded by Civ.R. 53(E) from assigning it as error.
 {¶ 72} Next, evidence in the record supported the magistrate's conclusion that the variances requested were substantial. Appellants have cited no authority in support of their argument that a trier of fact may not rely on the "numerical representations" of the variances. We observe that this method is often used to determine whether a requested variance is substantial. Whether a variance results in a deviation from a fifty foot setback requirement of five feet or fifty feet is an objective way to determine whether the variance is insignificant or substantial. Ohio courts routinely consider the *Page 20 
numerical percentage of deviation caused by a proposed variance in determining whether it is substantial. We note that appellants admitted in their submittals to the BZA that "the variance is substantial."
 {¶ 73} In Trademark Homes v. Avon Lake Bd. Of Zoning Appeals (1993),92 Ohio App.3d 214, the minimum lot size under the zoning ordinance was two hundred fifty per cent larger than the lot for which Trademark sought a variance. The Ninth Appellate District held that "[b]ecause of the magnitude of Trademark's request, a variance in its case would amount to a rezoning." Id. at 220. We hold that in determining whether the variance was substantial, the magistrate was entitled to consider the numerical representation of the requested variances. We noted, supra, that appellants failed to object to the magistrate's finding in this regard. They are therefore precluded from asserting it on appeal. Civ.R. 53(E).
 {¶ 74} We do not agree with appellants' argument that the Supreme Court in Duncan required a showing of disparate treatment in order for a variance to be considered substantial. Appellants argue there was evidence they were subject to such treatment because the BZA secretary testified appellants were asked to supply more information in connection with their variance application than one other applicant. We note there is no evidence that any other applicants received similar variances to those appellants requested, particularly with respect to the type, size, and location of the wall involved here and the evidence that appellants' wall caused ground water to be funneled onto their neighbors' property. We do not agree that the magistrate "ignored" this evidence. He simply chose not to give it any weight or credibility. As the trier of fact, he was entitled to make that determination. *Page 21 
 {¶ 75} Appellants argue that a city employee's alleged comment in 1998 that appellants did not need a permit compelled the magistrate to find that substantial justice could not be done without granting a variance. Because appellant did not challenge the trial court's finding that substantial justice would not be done if a variance was granted, this argument is waived. We note, however, that this factual background was before us in Streetsboro I in which we held that appellants were required to obtain a permit to construct their wall. As a result, appellants are also barred by res judicata from asserting this argument here.
 {¶ 76} Appellants mischaracterize the record when they state that appellants' wall "sits close to the easement." By appellants' admission, their wall is within the utility easement. Moreover, there is no evidence in the record of a lack of future plans to install sewer drains or utility extensions in the easement. In light of the proposed height of the wall and its construction with oversize cement blocks used on construction sites with each block weighing several tons, we cannot say the magistrate was incorrect in finding that appellants' proposed wall would interfere with future utility improvements.
 {¶ 77} Finally, appellants argue the magistrate failed to properly analyze the evidence in the record under each of the factors to be considered for granting a variance under S.C.O. Sec. 1105.12. Appellants never made this argument below and it is therefore waived on appeal. In any event, we do not agree with appellants' argument because the magistrate made detailed findings under each of the factors set forth in the SCO.
 {¶ 78} Appellants' third assignment of error is without merit. *Page 22 
 {¶ 79} Under their fourth assignment of error, appellants argue the magistrate's findings of fact were against the manifest weight of the evidence.
 {¶ 80} In a civil case, an appellate court will not reverse a judgment as being contrary to the weight of the evidence as long as there is some competent, credible evidence supporting the judgment. Vogel v.Wells (1991), 57 Ohio St.3d 91, 96. Even if we do not agree with the trial court or might have found differently, we cannot substitute our judgment for that of the trial court. Seasons Coal Co., supra, at 80.
 {¶ 81} Thus, before an appellate court can reverse a judgment as against the manifest weight of the evidence in a civil case, the court must determine whether the trier of fact, in resolving evidentiary conflicts and determining the credibility of witnesses, clearly lost its way and created a manifest miscarriage of justice. In re Lavery, 9th Dist. No. 20852, 2002-Ohio-3031, at ¶ 7.
 {¶ 82} In weighing the evidence, the magistrate obviously found appellee's witnesses to be more credible than appellants' witnesses. After reviewing the record, we cannot conclude the trier of fact lost its way and created a manifest miscarriage of justice in making its findings. We further hold that the magistrate did not act contrary to the manifest weight of the evidence.
 {¶ 83} Appellants argue that the magistrate's finding that "most neighbors" opposed the wall was a gross exaggeration because some of the neighbors did not oppose it. We note that several witnesses objected to the wall, and this testimony amply supports the magistrate's finding.
 {¶ 84} Appellants' objection to the magistrate's finding that Mr. Bierlair concluded that appellants' downspouts cause most of the erosion is not well-taken. A review of the *Page 23 
record demonstrates that this was the thrust of his testimony. The record thus supports this finding. In any event, whether the majority of the water came from appellants' downspouts or other areas of their property is irrelevant. The issue is whether appellants have demonstrated practical difficulties in the use of their property.
 {¶ 85} Appellants misconstrue the purpose of the magistrate's reference to appellants' previous litigation concerning their retaining wall. Appellants argued below that their retaining wall was not subject to regulation by the City. The magistrate correctly noted that this Court previously held in Streetsboro I that appellants' wall was subject to regulation, and that their argument to the contrary in this case was barred by res judicata.
 {¶ 86} Appellants' fourth assignment of error is without merit.
 {¶ 87} For the reasons stated in the Opinion of this court, the assignments of error are without merit, and it is the judgment and order of this court that the judgment of the Portage County Court of Common Pleas is affirmed.
 DIANE V. GRENDELL, J., COLLEEN MARY OTOOLE, J., concurs. *Page 1